STATE OF NORTH CAROLINA v. ELTARO McCOY BARR

No. 7221SC398

(Filed 28 June 1972)

Homicide § 21— second-degree murder — self-defense — sufficiency of evidence

The State's evidence in this homicide prosecution did not reveal that defendant acted in self-defense as a matter of law, and was sufficient to require submission of the case to the jury on the charge of second-degree murder and the lesser included offense of voluntary manslaughter, where it tended to show that defendant, a 39-year-old male, and decedent, a 52-year-old female, engaged in a fight, that decedent was hitting defendant with a shoe, and that defendant pulled out his gun and shot decedent.

APPEAL by defendant from *Kivett, Judge,* 25 October 1971 Session of Superior Court held in FORSYTH County.

Defendant was tried upon a bill of indictment, proper in form, charging him with murder in the first degree. The evidence for the State tended to show that on 3 September 1971, Louvnia (Louvenia) Pittman (hereinafter referred to as the deceased) and one Davette Levette Robbins (Davette), who was living with deceased, went to the apartment at 1825 North Trade Street in Winston-Salem where Davette's mother, Viola R. Hairston (Hairston), lived. (Hairston was defendant's "girl friend.") The defendant lived near the deceased, and prior to 3 September 1971, had had some disagreement with her. Davette and deceased had been at Hairston's a short time when Eltaro McCoy Barr (defendant) came into the bedroom of the apartment where all three of them were. At the time the defendant entered, the three of them were talking about him. Defendant made some remark to them and walked out but returned shortly thereafter. Deceased asked him what was wrong and the defendant told her not to talk to him. Deceased and defendant continued to talk to each other—deceased mentioned some-

thing about "some lies," and defendant said that something "was not true." Defendant then went to the door and was shaking his finger at deceased. He turned around at the door and Davette testified that the following occurred:

> "At this time she was standing at the dresser. She was standing here. Yes, he walked from here up to her there, in her direction. He was walking and talking. He was talking to her. He was still talking to her. The tone of his voice was angry-like. He was talking to her, pointing his finger. And she said, 'I tell you, don't point your finger in my face.' * * *

> —(W)hile he was walking towards her, I mean towards the direction, and said, 'I told you not to point your finger at me'; and he was still pointing it, talking to her, arguing at her, and she hit him with the shoe, and he hit her back, and you know, he started back at her. He just started right then, after she hit him. He used his fist. I think he had one, his left hand, grabbing hold of her, and was using his right. He hit her in the face. And they was beating each other on, you know, each other like that. She was still hitting him, and he was still hitting her. And I was over there at the door then because I had done got out of the way, and he was—well, I told him to stop hitting her because she was too old for him to hit on, and stuff like that; and he didn't hear me, I don't guess. He just kept on hitting, and she was still hitting. So he started trying to get his gun out of his pocket, and my mother jumped up and says, 'Quit, Coy,' you know, 'Quit!' And he says, he says, 'No! No!' He says. 'She's trying to kill me,' something like that. Eltaro said that.

> And he was bleeding real bad. And so, he was trying to get the gun out, and they struggled on over to by the closet opening, and they was still hitting each other the same way, hitting each other. And my mother saw him trying to get his gun out, and she tried to stop him, but she couldn't stop him, and he got it out. Eltaro got the gun out of his pocket and he shot. I only heard one shot. After that, they were still hitting each other. I mean she was still hitting him, you know, and her hits was getting fainter.

*          *          *

State v. Barr

He had his left hand about her blouse, up at the top, I think, up in the top, when he shot the deceased. With his right hand he was getting his gun out of his pocket. Yes, at the time this weapon went off his left hand was holding her blouse. * * * "

The Medical Examiner of Forsyth County, a physician and surgeon, testified that he had examined the body of the deceased on the evening of 3 September 1971, that she was dead at that time, that she had a bullet wound in the heart and that as a result thereof, had bled to death.

The defendant's evidence tended to show that on 3 September 1971, he had gone to Hairston's apartment to talk to her about some business, and when he walked in, the deceased started arguing with him. Deceased then took her shoe off and began to beat him in the head, and while she was beating him, he pulled the gun out and shot her. Defendant testified that he and deceased had not had any difficulties before, but that he had observed deceased assault other persons with weapons and that he was afraid of her. (He, the defendant, was 39 years old, weighed about 140 pounds and is "five-six or five-seven," and the deceased, who was 52 years old, was taller than he, weighed about 200 pounds, and was "muscle-built.") The defendant was "dazed" and bleeding and could not think because of the blows the deceased had struck before he shot her. Defendant's evidence also tended to show that he was not holding the deceased's blouse with his left hand when he shot her.

At the close of the State's evidence and upon defendant's motion for judgment as of nonsuit, the trial judge ruled that he would not submit the case to the jury on the charge of first-degree murder but would submit it to the jury on second-degree murder or a lesser included offense.

The jury returned a verdict of guilty of voluntary manslaughter. From a judgment of imprisonment for not less than seven years and not more than twelve years, the defendant appealed to the Court of Appeals, assigning error.

*Attorney General Morgan and Associate Attorney Speas for the State.*

*R. Lewis Ray for defendant appellant.*

State v. Barr

MALLARD, Chief Judge.

The defendant assigns as error the denial of his motions for judgment as of nonsuit. He argues and contends that all of the evidence for the State and for the defendant revealed that the defendant acted in self-defense. We do not agree. There was some evidence of self-defense, and the judge properly submitted the question of self-defense to the jury upon instructions to which there are no exceptions. When the evidence is taken in the light most favorable to the State, it was sufficient to require submission of the case to the jury on the charge of second-degree murder and the lesser included offense of voluntary manslaughter. The judge did not commit error in denying defendant's motion for nonsuit made at the close of all the evidence. G.S. 15-173.

The defendant argues and contends that the judge abused his discretion in failing to set aside the verdict as contrary to the weight of the evidence. We do not agree. No abuse of discretion is shown on this record, and absent an abuse of discretion, the denial of a motion to set aside a verdict as being against the greater weight of the evidence will not be disturbed on appeal. *State v. Massey,* 273 N.C. 721, 161 S.E. 2d 103 (1968).

We have considered all of the defendant's assignments of error that have been properly presented and no prejudicial error is made to appear. In the trial we find no error.

No error.

Judges CAMPBELL and BROCK concur.