STATE OF NORTH CAROLINA v. EUGENE WILBURN

No. 8114SC1024

(Filed 4 May 1982)

1. **Criminal Law § 91.4— newly retained counsel—denial of continuance**

The denial of defendant's motion for continuance to permit his attorney, who was retained on the day before the trial began, to prepare for trial did not violate defendant's constitutional right to the effective assistance of counsel where defendant had signed a written waiver of assigned counsel; defendant never moved to withdraw his waiver of assigned counsel; and defendant was given an adequate opportunity to retain counsel in that he was granted two continuances for the purpose of obtaining counsel after he signed the written waiver.

2. **Criminal Law § 34.8— evidence of other crimes—competency to show common plan and intent**

In a prosecution for attempting and conspiracy to obtain property by false pretenses by falsely promising to sell a grocery store owner cigarettes and canned goods from a Thomas and Howard warehouse at below cost, testimony by two other store owners that they were approached by defendant and asked if they were interested in buying items such as cigarettes at below

cost, that they were instructed to pick up the goods at a Thomas and Howard warehouse, that they dealt with other men as well as with defendant when they went to the warehouse, and that they gave defendant and another man money for the goods ordered but never received any goods *is held* competent to establish a common plan or scheme and to establish an intent to deceive.

3. **False Pretense § 1— attempt to obtain property by false pretenses—actual deception not necessary element**

In a prosecution for attempting to obtain property by false pretenses, it was not necessary for the State to prove that the victim was actually deceived by any alleged misrepresentation of the defendant.

4. **False Pretense § 3.1— conspiracy to obtain property by false pretenses—sufficiency of evidence**

The State's evidence was sufficient for the jury to find that defendant and another conspired to obtain property by false pretenses by misrepresenting to a grocery store owner that they would sell goods to him from a Thomas and Howard warehouse at below cost.

5. **Criminal Law § 142.4— condition of probation—restitution to person not victim of crimes charged ·**

The trial court erred in requiring defendant, as a condition of probation, to pay restitution to a victim not involved in the charges against defendant. G.S. 15A-1343(d).

APPEAL by defendant from *Bailey, Judge*. Judgment entered 11 March 1981 in Superior Court, DURHAM County. Heard in the Court of Appeals 2 March 1982.

Defendant was tried for and found guilty of attempting to obtain property by false pretenses and conspiracy to obtain property by false pretenses. Defendant appeals from the imposition of a sentence of not less than five nor more than seven years.

The State's evidence tends to show that in April 1980 defendant began visiting Johnny Andrews' grocery store located in Durham, North Carolina. During one of these visits, defendant asked Andrews if he would be interested in buying goods below cost. Defendant indicated he would talk to his boss, after Andrews expressed interest. After this conversation with defendant, Andrews became suspicious and contacted the Durham Police Chief and Robert Zack Long, Assistant Sales Manager of Thomas and Howard Wholesale Grocery Company, Inc. (hereinafter Thomas and Howard). The police then began a surveillance of Andrews' store and observed defendant enter the store on subsequent occasions in April and May. On one occasion defendant was

accompanied by Quillie Smith. During his visits to Andrews'
store, defendant would park his green Pontiac nearby but never
in the parking lot located in front of the store. After Andrews
had expressed interest in defendant's offer and had provided
defendant with a list of goods, defendant's "boss man" telephoned
him. The "boss man" informed Andrews that the cases of ciga-
rettes and canned goods would cost $17,450. These items normally
were valued at $40,000. They were to be delivered to Andrews on
20 May 1980 at one of Thomas and Howard's warehouses in
Greensboro. Andrews was told to look for a man known as "Big
Freddy," later identified as Quillie Smith. On 20 May 1980 An-
drews and an S.B.I. agent, posing as Andrews' partner, drove a
rented truck to the Greensboro warehouse and parked near the
cash-and-carry window. Smith had arrived at the warehouse in a
green Pontiac just minutes prior to Andrews' and Agent Black's
arrival. When Andrews approached him, Smith called him by
name and introduced him to a Mr. Rosemond, later identified as
Steven Price. Price handed Andrews a bill of lading and then told
him to drive around the block because too many people were
present. After Andrews and Agent Black left, defendant and Ken-
neth Caudle arrived at the warehouse and parked near the cash-
and-carry window. When Andrews and Black returned, Andrews
initialed the bill of lading and asked to see the goods. Price re-
fused and demanded the money. Law enforcement personnel, who
had been observing this activity, then moved in to arrest Price,
Smith, Caudle and defendant. At the time none of these men were
employed at the Thomas and Howard warehouse in Greensboro.

Defendant presented no evidence.

*Attorney General Edmisten, by Assistant Attorney General
Robert G. Webb, for the State.*

*Loflin & Loflin, by Thomas F. Loflin, III, and Shirley L.
Fulton for defendant appellant.*

CLARK, Judge.

[1]  On 9 March 1981, one day prior to the trial, defendant's at-
torney filed a motion for continuance until 11 May 1981. He also
filed a notice informing the court that he represented defendant
for the limited purpose of moving for the continuance. The court
denied the motion and ordered defendant to proceed to trial.

Defendant has assigned error to the court's denial of this motion for continuance.

The record on appeal reveals that on 4 August 1980 defendant was indicted for attempting to obtain property by false pretenses. He was indicted on the conspiracy charge approximately three months later. He was formally arraigned on 25 September 1980. Defendant thereafter moved for a continuance of the trial from 1 December 1980 until 12 January 1981. The court granted his motion noting that defendant's attorney, Linwood Peoples, had suffered a stroke. Apparently defendant was granted a second continuance on 15 January 1981 to run until 9 February 1981. The trial court dismissed Peoples as defendant's attorney on 10 February 1981. On the same date defendant waived in writing his right to counsel. Judge Maurice Braswell granted defendant another continuance running from 9 February 1981 to 5 March 1981 and told defendant to obtain an attorney. When he appeared before Judge Braswell on 5 March 1981, defendant still was without legal representation. Judge Braswell then set the trial date for 10 March 1981. On 9 March 1981 defendant retained Sydenham B. Alexander, Jr., as his attorney. Mr. Alexander immediately filed the notice of limited representation and motion for continuance. In his motion he requested an extension of sixty days for the purpose of preparing for trial.

Defendant argues that the court's denial of this motion for continuance violated his constitutional right to the effective assistance of counsel. We disagree. This Court has emphasized that a signed waiver of right to have assigned counsel was " 'good and sufficient until the proceeding finally terminated, unless the defendant himself makes known to the court that he desires to withdraw the waiver and have counsel assigned to him.' " *State v. Smith*, 27 N.C. App. 379, 380-81, 219 S.E. 2d 277, 279 (1975), *quoting State v. Watson*, 21 N.C. App. 374, 379, 204 S.E. 2d 537, 540 (1974). In *Smith, supra*, the defendant waived his right to counsel on 10 June 1974. On 22 July 1974, the date of his trial, defendant moved to withdraw the waiver and have counsel assigned. We noted:

> If this tactic is employed successfully, defendants will be permitted to control the course of litigation and sidetrack the trial. At this stage of the proceeding, the burden is on the

defendant not only to move for withdrawal of the waiver, but also to show good cause for the delay. Upon his failure to do so, the signed waiver of counsel remains valid and effective during trial.

*Id.* at 381, 219 S.E. 2d at 279. In the case *sub judice*, there is no evidence that defendant ever moved to withdraw his waiver of assigned counsel. At the hearing on this motion, defendant informed the court that he wanted a lawyer to represent him. He never indicated, however, that he was indigent and desired appointment of counsel. It is obvious from the record that defendant was merely seeking a continuance in order for his recently retained counsel to prepare for trial. Defendant had been granted two continuances for the purpose of obtaining counsel after he signed the written waiver on 10 February 1981. The court gave defendant an adequate opportunity for this purpose, and he should not be permitted to delay litigation any longer. This assignment of error is overruled.

[2] Defendant has also assigned error to the admission of evidence "of other alleged criminal offenses committed by him at other times and other places not charged in the indictments." Defendant contends that this evidence was irrelevant and deprived him of his constitutional right to due process of law. Over defendant's objection, the trial court allowed Donald Thomas to testify that he owned a convenience store in Shelby; that defendant approached him over a year before the trial about buying goods below cost and that he later entered into a deal with defendant and Caudle to buy 950 cases of cigarettes for $25,000. Thomas emphasized that the cases normally sold for $135,000. Defendant and Caudle told Thomas to pick the cigarettes up at the Thomas and Howard warehouse in Butner. After Thomas arrived at the' warehouse, he was told to drive to a nearby restaurant and wait before loading his truck. While Thomas was at the restaurant a man drove up and asked to count the $25,000. Thomas gave him the money and never received any of the cigarettes.

Claude Puckett testified that defendant came to his grocery store in Mount Airy in 1979. He asked if Puckett would be interested in buying items from the Thomas and Howard warehouse in Hickory which was closing. Puckett was later in-

formed that he could purchase $27,000 worth of merchandise, which included cigarettes, from the warehouse for the price of $10,000. He later drove to the warehouse and talked to defendant and another man. Puckett gave the men $10,000 but never received any merchandise in return.

It is well established in North Carolina that in a prosecution for a particular crime, the State cannot offer evidence which tends to show that the accused committed another distinct, separate or independent offense. This rule, however, is subject to eight well known exceptions including the following:

> 6. Evidence of other crimes is admissible when it tends to establish a common plan or scheme embracing the commission of a series of crimes so related to each other that proof of one or more tends to prove the crime charged and to connect the accused with its commission. (Citations omitted.)

*State v. McClain*, 240 N.C. 171, 176, 81 S.E. 2d 364, 367 (1954). In a more recent decision the North Carolina Supreme Court has emphasized that before testimony can be admitted under this exception, it must first be examined carefully to assure that it does more than merely show character or a disposition to commit the offense charged. *State v. Barfield*, 298 N.C. 306, 259 S.E. 2d 510 (1979), *cert. denied*, 448 U.S. 907, 65 L.Ed. 2d 1137, 100 S.Ct. 3050, *reh. denied*, 448 U.S. 918, 65 L.Ed. 2d 1181, 101 S.Ct. 41 (1980).

> A mere similarity in results is not a sufficient basis upon which to receive evidence of other offenses. Instead, there must be such a concurrence of common features that the assorted offenses are naturally explained as being caused by a general plan.

*Id.* at 329, 259 S.E. 2d at 530. The testimony of Thomas and Puckett meets these requirements. These two men, like Andrews, were approached by defendant and asked if they were interested in buying such items as cigarettes below cost. They were instructed to pick the goods up at a Thomas and Howard warehouse. Once at the warehouse, they dealt with men, other than defendant, who appeared to be involved in defendant's plan to sell goods below cost. The only major difference between Thomas' and Puckett's dealings with defendant and Andrews' dealings with him is that Andrews never gave defendant any

money. Because of this difference, the testimony of Puckett and Thomas was also admissible under the following exception to the general rule excluding evidence of the commission of other offenses by the accused:

> 2. Where a specific mental intent or state is an essential element of the crime charged, evidence may be offered of such acts or declarations of the accused as tend to establish the requisite mental intent or state, even though the evidence discloses the commission of another offense by the accused. (Citations omitted.)

*State v. McClain, supra,* at 175, 81 S.E. 2d at 366. One of the elements of obtaining property by false pretenses is the intent to deceive. *State v. Cronin,* 299 N.C. 229, 262 S.E. 2d 277 (1980). Since defendant in the case *sub judice* raised the issue as to whether or not Andrews would have received the cigarettes if he had paid Price the $25,000 agreed upon, the testimony of Puckett and Thomas was admissible for the purpose of establishing the requisite intent to deceive Andrews. For the foregoing reasons, this assignment of error is overruled.

[3] Defendant assigns error to the failure of the court to dismiss the case against him for insufficiency of the evidence. He first contends that since the State failed to present evidence of the essential element, that Andrews was actually deceived by any alleged misrepresentation of the defendant, there was insufficient evidence for the jury to find him guilty of attempting to obtain property by false pretenses. Defendant is incorrect in his belief that this is an essential element of an attempt to obtain property by false pretenses.

> It is not necessary, in order to establish an intent, that the prosecutor should have been deceived, or should have relied on the false pretenses and have parted with his property; indeed, if property is actually obtained in consequence of the prosecutor's reliance on the false pretenses, the offense is complete and an indictment for an attempt will not lie. (Citations omitted.)

35 C.J.S. *False Pretenses* § 36 at 861 (1960); *State v. Cronin, supra.*

[4] Defendant also erroneously argues that there was insufficient evidence to convict him of the offense of conspiracy to obtain property by false pretenses. Defendant was indicted for feloniously conspiring with Steven Wesley Price, Kenneth Larry Caudle, William Logan and Quillie Smith, Jr., to commit the crime of obtaining property by false pretenses. A criminal conspiracy, which is the agreement between at least two persons to commit an unlawful act, may be proven by circumstantial evidence. *State v. Butler*, 269 N.C. 733, 153 S.E. 2d 477 (1967). In the case before us there was clearly sufficient evidence to show that defendant had entered into an agreement with Quillie Smith to commit the offense of obtaining property by false pretenses. The actions of these two men support such a conclusion. This assignment of error is therefore overruled.

[5] Defendant further assigns error to the judgment against him for the reasons that neither indictment was sufficient to charge a criminal offense; that the State presented insufficient evidence of each alleged crime and that the court erroneously required defendant to pay restitution to a victim not involved in the charges against defendant. We find merit to his last reason. In the judgment and commitment against defendant, Judge Bailey sentenced him to a maximum of seven years and a minimum of five years. He then agreed to suspend the term of imprisonment upon the following condition:

> Commitment shall not issue at this time if the defendant by 4:00 p.m. on April 27, 1981 has paid into the office of the Clerk of Superior Court of Durham County the sum of $25,000.00 for the use and benefit of Don Thomas, 300 N. Washington Street, Shelby, N.C., and has paid the cost of court, and the sentence is suspended for five years and the defendant is placed on probation for five years under the usual terms and conditions of probation.

> In the event said restitution and cost are not paid in full by 4:00 p.m. on April 27, 1981, commitment shall issue forthwith.

It appears from the record that defendant failed to meet this condition and began serving his sentence on 27 April 1981. This portion of Judge Bailey's order is invalid. G.S. 15A-1343, in effect on the date defendant was sentenced, provided in pertinent part:

(d) Restitution as a Condition of Probation.—As a condition of probation, a defendant may be required to make restitution or reparation to an aggrieved party or parties who shall be named by the court for the damage or loss caused by the defendant arising out of the offense or offenses for which the *defendant has been convicted.* (Emphasis added.)

In the case *sub judice* defendant was convicted of attempting and conspiring to obtain property by false pretenses from Johnny Andrews. There is no evidence in the record that defendant was ever convicted of obtaining property by false pretenses from Don Thomas. This Court has recently emphasized:

Provisions in probationary judgments requiring restitution are constitutionally permissible. *State v. Caudle,* 276 N.C. 550, 173 S.E. 2d 778 (1970); *State v. Green,* 29 N.C. App. 574, 225 S.E. 2d 170, *disc. rev. denied,* 290 N.C. 665 (1976). However, the provision must be related to the criminal act for which defendant was convicted, else the provision may run afoul of the constitutional provision prohibiting imprisonment for debt. N.C. Const. art. I, § 28 (1970).

*State v. Bass,* 53 N.C. App. 40, 42, 280 S.E. 2d 7, 9 (1981). The judgment is therefore vacated and the case remanded for resentencing.

Defendant's remaining assignments of error involve allegations of prejudicial error in comments made and instructions given to the jury by the trial judge. We have carefully reviewed each of these assignments of error and find no evidence of prejudicial error entitling defendant to a new trial.

No error in the trial. Judgment and commitment vacated and case remanded for resentencing.

Judges ARNOLD and WEBB concur.