STATE OF NORTH CAROLINA v. SHEREE VONELLE SUDDRETH BYRD AND JOSEPH ALLEN BYRD

No. 8225SC615

(Filed 15 February 1983)

1. Homicide § 21.9; Parent and Child § 2.2— death of child—child abuse—involuntary manslaughter

The State's evidence was sufficient for the jury to find that the death of defendants' 25-day-old child was proximately caused by defendants' violation of the child abuse statute, G.S. 14-318.2(a), and that defendants were thus guilty of involuntary manslaughter of the child, where it tended to show that the child died as the result of a blunt trauma to the head, he had six broken ribs which injuries had been suffered from one to two weeks before the head injury, defendants' other child suffered from the Battered Child Syndrome, and the child was staying with defendants in the home of his grandmother at the time of his death, and where there was no evidence that any adults other than defendants had any responsibility for the care of the child while he was in the home of his grandmother.

2. Criminal Law § 34.4— evidence of other crime—similarity to crime charged

Evidence of a separate crime is admissible to prove the crime for which a defendant is being tried if the separate crime is similar to the one for which

the defendant is being tried and was committed within a time not too far removed from the crime with which the defendant was charged. Therefore, in a prosecution of defendants for the involuntary manslaughter of their 25-day-old son by inflicting or allowing a blow to the child's head, evidence that defendants' other child suffered from Battered Child Syndrome was admissible to prove the crime charged.

3. **Criminal Law § 102.6— jury argument—misstatements of law—absence of prejudice to defendants**

　　In this prosecution of defendants for the involuntary manslaughter of their 25-day-old child, defendants were not prejudiced by the prosecutor's misstatements of law in his jury argument which referred to the Battered Child Syndrome as if it had some force as a rule of law and which incorrectly told the jury that if a young child is with his parents and receives an injury, "then his parents are guilty" and that proof in cases where there is evidence of Battered Child Syndrome is different from ordinary murder and manslaughter cases, since the overall thrust of the prosecutor's argument was to the effect that if a child who is in the care of his parents receives an injury which would not likely have been caused by accidental means, the jury can conclude the parents violated the child abuse statute, G.S. 14-318.2(a), the court properly instructed the jury how to consider the evidence against defendants, and it is presumed that the jury followed the court's instructions.

　　Judge BECTON dissenting.

APPEAL by defendants from *Snepp, Judge.* Judgments entered 21 January 1982 in Superior Court, CALDWELL County. Heard in the Court of Appeals 8 December 1982.

The defendants were tried for the murder of their 25-day-old son. The State's evidence showed that at about 7:40 a.m. on 25 January 1981 the defendants took their infant son, Jo Von Cornelius Byrd, to the Emergency Room of Caldwell Memorial Hospital. The examining physician determined that the child had been dead for more than an hour. He detected no external signs of trauma, and dismissed a blue spot on the child's back as discoloration. The *feme* defendant told the physician that she and her husband had slept in the room with the infant the previous night. She said the child was all right at 3:00 a.m., but that she had awakened at 6:00 a.m. and discovered he was not breathing properly. Her husband attempted mouth-to-mouth resuscitation and they then took the child to the hospital. The defendants were staying in the home of the *feme* defendant's mother. The *feme* defendant's brother and uncle were also staying in the house.

A pathologist, who performed an autopsy the next day, discovered no external signs of trauma. He formed the opinion that

the child's death was from a natural cause, a spontaneous rupture of the blood vessels beneath the arachnoid membrane. Jo Von Cornelius Byrd was buried. On 4 September 1981, approximately seven months after the burial, his body was exhumed pursuant to a court order. The body was sent to Chapel Hill where an autopsy was performed by Dr. John Butts, Senior Assistant Chief Medical Examiner. Dr. Butts testified that in his opinion six of the infant's ribs had been broken from one to two weeks prior to his death. The child also had several areas of reddish-brown discoloration or bruises in his skull, the most severe of which had resulted in brain damage. In Dr. Butts' opinion, the cause of death was a blunt trauma to the head and not a vascular malformation.

Dr. Sarah Sinal testified over objection of the defendants that she had examined YaVonka Byrd, the defendants' other child, in December 1978 when the child was one month old and again on 10 May 1979. In her opinion, YaVonka had injuries which were an example of the Battered Child Syndrome. There was evidence that YaVonka had been removed from the defendants' custody.

The defendants did not offer evidence.

Each defendant was convicted of involuntary manslaughter and was sentenced from eight to ten years in prison. Each defendant appealed.

*Attorney General Edmisten, by Assistant Attorney General Nonnie F. Midgette, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender Malcolm R. Hunter, Jr., for defendant appellant Sheree Vonelle Suddreth Byrd.*

*Wilson, Palmer and Cannon, by W. C. Palmer, for defendant appellant Joseph Allen Byrd.*

WEBB, Judge.

[1] The defendants filed separate briefs, each of which raises three identical questions for the Court's determination. They first assign error to the denial of their motions to dismiss the charges of involuntary manslaughter. If the State introduced substantial

evidence that the defendants intentionally violated a statute designed for the protection of people and that violation proximately caused the death of Jo Von Cornelius Byrd, the defendants' motions to dismiss were properly denied. *See State v. Wilkerson*, 295 N.C. 559, 247 S.E. 2d 905 (1978). We believe there is sufficient evidence for the jury to find that each of the defendants intentionally violated G.S. 14-318.2(a) and the violation was the proximate cause of Jo Von Byrd's death. G.S. 14-318.2(a) provides:

> "Any parent of a child less than 16 years of age, or any other person providing care to or supervision of such child, who inflicts physical injury, or who allows physical injury to be inflicted, or who creates or allows to be created a substantial risk of physical injury, upon or to such child by other than accidental means is guilty of the misdemeanor of child abuse."

The evidence most favorable to the State showed that Jo Von Byrd died as the result of a blunt trauma to the head. He had six broken ribs which injuries had been suffered from one to two weeks before the head injury. There was evidence that the defendants' other child suffered from Battered Child Syndrome. At the time of the child's death, the infant was staying with his mother and father in the home of Mrs. Byrd's mother. Mrs. Byrd's uncle and brother were also staying in the home at that time. There is no evidence that any adults other than his natural parents had any responsibility for the care of Jo Von Byrd while he was in the home of his grandparents. We hold that the jury could find from the evidence that Jo Von Byrd suffered a blow to the head which was not accidental and this blow was a proximate cause of his death. We also hold that the jury could find that either of the defendants inflicted the blow to the child's head which caused his death, or that either of them allowed the blow to the child's head which caused his death. The defendants' first assignment of error is overruled.

[2] The defendants contend in their second assignment of error that the court erred in allowing testimony that the defendants' other child, YaVonka, suffered from Battered Child Syndrome, and that she had been removed from the defendants' home. The defendants argue that the only relevancy of this testimony is to

show the disposition of the defendants to abuse their children. The rule has been stated to be that evidence of other crimes or bad actions is inadmissible if its only relevancy is to prove the character of the defendant or his disposition to commit the alleged offense. In applying this rule, our courts have at times found evidence of other crimes to be relevant when it could be argued that the only relevancy was to show the disposition of the defendant to commit a similar crime. *See* 1 Brandis on N.C. Evidence § 92, 350, n. 17 (1982).

In *State v. Rick,* 304 N.C. 356, 283 S.E. 2d 512 (1981) evidence was held to be admissible in a rape case that the defendant had sexually assaulted another woman on the same day that the alleged rape occurred. In *State v. Williams,* 303 N.C. 507, 279 S.E. 2d 592 (1981) the defendant was tried for a first degree sexual offense with two children on 1 May 1980. Our Supreme Court held it was proper for another 12-year-old girl to testify "the defendant had lifted her skirt up and rubbed her breasts for about twenty minutes" on or about 1 May 1980. In *State v. Humphrey,* 283 N.C. 570, 196 S.E. 2d 516 (1973) the Supreme Court held that in a trial for rape, evidence was admissible that on the day of the alleged rape, the defendant exposed himself to another woman. In *State v. Greene,* 294 N.C. 418, 423, 241 S.E. 2d 662, 665 (1978) our Supreme Court noted that we had "been very liberal in admitting evidence of similar sex crimes in construing the exceptions to the general rule." There have been cases other than those involving sex crimes in which evidence of other crimes was held admissible. In *State v. Barfield,* 298 N.C. 306, 259 S.E. 2d 510 (1979), *cert. denied,* 448 U.S. 907, 100 S.Ct. 3050, 65 L.Ed. 2d 1137, *reh'g denied,* 448 U.S. 918, 101 S.Ct. 41, 65 L.Ed. 2d 1181 (1980) our Supreme Court held that in a prosecution for homicide by poisoning, evidence of prior poisonings of other persons was held properly admitted. In *State v. Irwin,* 304 N.C. 93, 282 S.E. 2d 439 (1981) testimony that the defendant had robbed drugstores in Ohio was held admissible in defendant's trial for attempted armed robbery and felony-murder of a drugstore operator in North Carolina. In *State v. Powell,* 55 N.C. App. 328, 285 S.E. 2d 284 (1982) evidence that a defendant charged with conspiracy to commit larceny had dealt regularly in the purchase and resale of stolen goods was held admissible. In *State v. Wilburn,* 57 N.C. App. 40, 290 S.E. 2d 782 (1982) evidence that the defendant

charged with attempting to obtain and conspiracy to obtain money by false pretenses had previously been involved in similar incidents was held admissible. *See also State v. Wilson,* 57 N.C. App. 444, 291 S.E. 2d 830 (1982) and *State v. Jones,* 57 N.C. App. 460, 291 S.E. 2d 869 (1982).

Some of the above cited cases say that evidence of other crimes was admissible to prove identity. Others say it proved either a common scheme or plan, intent, motive, or a state of mind. Some of the cases say it proved more than one of these things. We believe that based on the facts of the cases decided in this state, evidence of a separate crime is admissible to prove the crime for which a defendant is being tried if the separate crime is similar to the one for which the defendant is being tried, and was committed within a time not too far removed from the crime with which the defendant was charged. We hold that under this rule, evidence that YaVonka Byrd suffered from Battered Child Syndrome was admissible. The defendants' second assignment of error is overruled.

[3] In their third and last assignment of error the defendants contend that the district attorney made an improper argument to the jury. The district attorney argued in part as follows:

"That is where the Battered Child Syndrome comes in, and the Battered Child Syndrome is our law, our courts have indorsed it. It's simply this: That where a young child is in a home, is with his parents and he receives an injury which can't be explained as a accidental injury, then his parents are guilty. We don't have to prove ---

MR. PALMER: Your Honor, I OBJECT to that. That's not the law.

THE COURT: OVERRULED. I'll instruct the Jury.

. . . .

---We do not have to prove somebody saw one or both of these people strike that child. We do not. And Mr. Tuttle is in error when he argued that to you, I submit to you. He was in error and then they talk about it some more after I sit down. I hope you will keep in mind the fact we do not have to prove by someone who saw them strike the child that they

did it. The Battered Child Syndrome means that where a child in a home dies, not from natural causes, from injuries that have been exhibited in a pattern over a period of time. That that is all we have to show in order to meet our burden of proof.

MR. PALMER: Your Honor, I OBJECT to that argument.

THE COURT: Objection is OVERRULED.

Now, that's the Battered Child Syndrome. I hope you all won't get hung up on and their argument to you that we did not show by Joe Blow out here that he saw Sheree Byrd strike the child or Joe Byrd strike the child. We do not have to prove that and that is different from an ordinary murder or manslaughter case.

We have to do it in a ordinary murder or manslaughter case, but we do not where it is a young child. I hope you will remember that.

. . . .

Now, Ladies and Gentlemen, I just ask you: Don't require us to prove more to you than we have to prove to show who killed this child. Don't ask us to get to get [sic] in your mind. Don't get in your mind an idea that we've got to prove which one of these two did it. We don't.

MR. TUTTLE: OBJECTION.

And I say that without hesitation because that is the law.

MR. PALMER: Well, I OBJECT to that, Your Honor.

THE COURT: Objection is OVERRULED.

We do not have to prove that. The law says that when these things happen, this pattern of abuse over a period of time happens and the child dies by something that is unexplainable, while the parents has it and the parents had him because they brought him in that morning. And we do not have to prove which one of them did it.

MR. PALMER: I OBJECT to that, Your Honor.

THE COURT: Objection is OVERRULED.

And the law does not say that maybe somebody else did it. . . ."

The district attorney made several misstatements of the law in his argument. He referred to the Battered Child Syndrome as if it had some force as a rule of law. Battered Child Syndrome is a medical term. It refers to children who have injuries that are inconsistent with accidental origins by virtue of the distribution of the injuries. *See State v. Wilkerson, supra.* Battered Child Syndrome does not have by itself any legal consequences. The district attorney stated if a young child is home with his parents and receives an injury which cannot be explained as an accidental injury, "then his parents are guilty." This is not correct. It is evidence from which the jury may find the parents are guilty after considering it with all other evidence. He also said that the proof in cases where there is evidence of Battered Child Syndrome is different from ordinary murder and manslaughter cases. This is not correct. Evidence of Battered Child Syndrome is circumstantial evidence which should be treated as any other circumstantial evidence in a murder or manslaughter case. We also note that there was no testimony in this case that Jo Von Byrd, for whose homicide the defendants were being tried, had Battered Child Syndrome. The testimony was that YaVonka Byrd had Battered Child Syndrome.

In spite of the misstatements of the district attorney, we do not believe there was prejudicial error. We believe the overall thrust of his argument was to the effect that if a child who is in the care of his parents receives an injury that would not likely have been caused by accidental means, the jury can conclude the parents violated G.S. 14-318.2(a). This would not mislead the jury. The court properly instructed the jury how to consider the evidence against the defendants and we presume the jury followed these instructions.

No error.

Judge HEDRICK concurs.

Judge BECTON dissents.

Judge BECTON dissenting.

The rule enunciated in *State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364 (1954)—that evidence of other crimes, offenses, or circumstances is inadmissible if its only relevance is to show the character of the defendant or his disposition to commit an offense of the nature of the one charged—is still the law. The exceptions to the rule, and there have been many, have not engulfed the rule. The cases cited by the majority all fall within the exceptions to the *McClain* rule. They suggest neither an extension of the rule nor a re-writing of the rule. I, therefore, disagree with the majority's statement, ante p. 6, that

> based on the facts of the cases decided in this [S]tate, evidence of a separate crime is admissible to prove the crime for which a defendant is being tried if the separate crime is similar to the one for which the defendant is being tried, and was committed within a time not too far removed from the crime with which the defendant was charged.

Thus, while I concur in what I believe to be a close non-suit issue, I dissent from the majority's resolution of the *McClain* issue and the improper closing argument issue.

## I

In my view, the only relevancy of the evidence that the defendants' other child, YaVonka, suffered from Battered Child Syndrome and had been removed from defendants' home was to show the disposition of the defendants to abuse their children. There was no evidence in this case that defendants had been the exclusive caretakers of YaVonka. There was no evidence that YaVonka was in the care of defendants at the time she received her injuries. Significantly, Doctor Sinal testified that the defendants told her on 10 May 1979 that they had been caretakers of YaVonka for only about two weeks. Again, the evidence against defendants was far from overwhelming, and the improperly admitted evidence was prejudicial. That the *McClain* rule is alive and well is evidenced by the recent words of our Supreme Court in *State v. Shane*, 304 N.C. 643, 653-54, 285 S.E. 2d 813, 820 (1982):

> [S]ubstantive evidence of a defendant's past, and distinctly separate, criminal activities or misconduct is generally excluded when its only logical relevancy is to suggest defend-

ant's propensity or predisposition to commit the type of offense with which he is presently charged. [Citations omitted.] 'Logical relevancy' is capably demonstrated whenever such evidence has some bearing upon genuine questions concerning knowledge, identity, intent, motive, plan or design, connected crimes, or consensual illicit sexual acts between the same parties. [Citations omitted.]

* * *

In addition, it must affirmatively appear that the probative force of such evidence outweighs the specter of undue prejudice to the defendant, and, in close cases, fundamental fairness requires giving defendant the benefit of the doubt and excluding the evidence. [Or, as it is more descriptively said in the game of baseball, the tie must go to the runner.] [Citations omitted.]

*Id.*, 304 N.C. at 653-54, 285 S.E. 2d at 820.

II

"The trial court has a duty, upon objection, to censor remarks not warranted by either the evidence or the law. . . ." *State v. Monk*, 286 N.C. 509, 516, 212 S.E. 2d 125, 131 (1975). In the case *sub judice*, the defendants interposed several objections to the district attorney's argument, ante, pp. 7-8. The trial court overruled each objection, and the district attorney was permitted to continue the same line or argument. The majority correctly points out that the district attorney made several misstatements of the law, and further notes "that there was no testimony in this case that Jo Von Byrd, for whose homicide the defendants were being tried, had a Battered Child Syndrome. The testimony was that YaVonka Byrd had a Battered Child Syndrome." Ante, p. 8. Yet, the majority finds no prejudicial error. I disagree.

The district attorney's statements were grossly improper. The district attorney straightforwardly told the jury that since the State showed the Battered Child Syndrome, that the defendants were *ipso facto* guilty. That is not the law. The trial court lent its imprimatur to the statements by failing, in the face of repeated objections, "to sustain objection to the prosecuting attorney's improper and erroneous argument [and by failing] to instruct the jury that the argument was improper with prompt and

explicit instructions to disregard it." *State v. Monk*, 286 N.C. at 518, 212 S.E. 2d at 132.

The erroneously admitted evidence concerning the defendants' other child, YaVonka, and the improper arguments relating to the Battered Child Syndrome by the district attorney, were sufficiently prejudicial, in my view, to warrant a new trial.