STATE OF NORTH CAROLINA v. CHRISTIAN ARIC SALMON

No. COA99-1259

(Filed 21 November 2000)

## 1. Constitutional Law— self-incrimination—exercise of right to counsel—pre-Miranda warning—admissible

The trial court did not err in a second-degree murder prosecution by admitting the statement of a police officer on cross-examination that defendant had been informed that a youth detective would be speaking with him at the police station and defendant had responded, "Not without my lawyer." The officer had testified on direct examination for defendant that before defendant had been given his Miranda warnings he had volunteered that "I didn't mean to do it." The Fifth Amendment Self-Incrimination Clause rather than the Sixth Amendment Right to Counsel is involved here since no indictment or juvenile petition had been filed, and the Fifth Amendment's Self-Incrimination Clause does not prevent the use of defendant's right to counsel

STATE v. SALMON

[140 N.C. App. 567 (2000)]

against him at trial when defendant exercises that right prior to his being advised of his Miranda rights.

**2. Homicide— second-degree murder—provocation—insufficient as matter of law**

The trial court correctly denied defendant's motion to dismiss the charge of second-degree murder, properly leaving the issue of provocation for the jury to decide, where the victim told defendant he was going to have sex with the defendant's sister; defendant said that the victim would not and that he would shoot the victim; defendant pointed a gun at the victim; the victim shoved defendant, who shoved back; and defendant shot the victim. The victim never assaulted or threatened to assault defendant; his statement was inflammatory, but the statement and the shoving were not sufficient to negate malice as a matter of law.

**3. Homicide— second-degree murder—instructions—malice**

There was no plain error in a second-degree murder prosecution where defendant contended that the prosecutor incorrectly stated the law by arguing that the law "presumes" that a pointed weapon is inherently dangerous. The remarks were, at most, technical misstatements of the law, and not prejudicial because the court subsequently gave a correct instruction on malice.

**4. Criminal Law— prosecutor's argument—comment on defendant's demeanor**

There was no error in a prosecution for second-degree murder in the State's closing argument on defendant's demeanor and lack of emotion during the trial where the prosecutor veered toward the line marking comment on defendant's credibility but did not cross it.

**5. Sentencing— restitution—payment of funeral expenses— effective date**

An order of restitution requiring a second-degree murder defendant to pay the victim's funeral expenses was vacated because the crime was committed on 29 September 1997 and N.C.G.S. § 15A-1340.34, authorizing the payment of restitution to a victim's estate, became effective on 1 December 1998.

Appeal by defendant from judgment entered 27 January 1999 by Judge Howard R. Greeson, Jr. in Guilford County Superior Court. Heard in the Court of Appeals 20 September 2000.

**STATE v. SALMON**

[140 N.C. App. 567 (2000)]

*Attorney General Michael F. Easley, by Assistant Attorney General Thomas B. Wood, for the State.*

*John Bryson for defendant-appellant.*

LEWIS, Judge.

On 2 October 1997, defendant was charged by way of a juvenile petition with the murder of fifteen-year-old Brian Jason Dragon. Defendant was also fifteen years old at the time of the alleged offense and was supposedly a close friend of the victim. After a probable cause hearing, the juvenile court judge bound defendant over to be tried as an adult in superior court. Defendant was then tried at the 11 January 1999 Session of Guilford County Superior Court. On 26 January 1999, the jury returned a verdict finding him guilty of second-degree murder. The trial judge sentenced defendant to a term of 157 to 198 months' imprisonment, from which he appeals.

[1] Defendant first contests the admission of certain testimony by defense witness Michael J. Edmundson, a former police officer with the Greensboro Police Department. Following his arrest, defendant was placed in a patrol car with then-Officer Edmundson. Defendant was not at this time advised of his *Miranda* rights. (Simply being taken into custody does not trigger the protections of *Miranda*; a defendant must also be subject to police *interrogation. State v. Ladd*, 308 N.C. 272, 280, 302 S.E.2d 164, 170 (1983)). During defendant's direct examination, Officer Edmundson testified that, during the ride to the police station, defendant voluntarily stated, "I didn't mean to do it." (Tr. at 819). Defendant used this statement to support his primary defense—i.e., that he did not mean to kill Brian Dragon because he did not believe the gun was loaded.

On cross-examination by the State, Officer Edmundson testified that, following this voluntary statement, defendant was informed that a youth detective would be speaking with him upon arrival at the station, to which defendant responded, "Not without my lawyer." (Tr. at 825). The State used this second statement to rebut defendant's mistake-of-fact defense. Specifically, the State argued to the jury that, if it truly was a mistake, defendant would not have needed to speak with a lawyer. Defendant now claims that, by introducing defendant's statement "Not without my lawyer," the State unconstitutionally used defendant's exercise of his right to counsel against him.

We begin with a brief overview of the Constitutional right to counsel. There are two separate rights to counsel embodied in the

Constitution. The first is the explicit right to counsel contained in the Sixth Amendment. That right is only triggered once formal adversarial proceedings are initiated. *Kirby v. Illinois*, 406 U.S. 682, 689, 32 L. Ed. 2d 411, 417 (1972). Here, no indictment or juvenile petition had been filed at the time, and so that right is not at issue. *See generally Sulie v. Duckworth*, 689 F.2d 128, 130 (7th Cir. 1982) (explaining that a defendant's pre-arraignment exercise of his right to counsel does not trigger the Sixth Amendment protections), *cert. denied*, 460 U.S. 1043, 75 L. Ed. 2d 796 (1983). The second right to counsel is embodied within the Fifth Amendment's Self-Incrimination Clause and is a necessary corollary to defendant's right to silence. *Miranda v. Arizona*, 384 U.S. 436, 469, 16 L. Ed. 2d 694, 721 (1964). It is this Fifth Amendment right to counsel (as incorporated through the Due Process Clause of the Fourteenth Amendment) that is at issue here.

Having clarified the specific right involved, we next outline the relevant case law in this area. In *Doyle v. Ohio*, the United States Supreme Court held that, after a defendant is given the *Miranda* warnings, the exercise of his right to silence cannot be used against him. 426 U.S. 610, 618, 49 L. Ed. 2d 91, 98 (1976). The Supreme Court later clarified it is only when silence is induced by the State by the *Miranda* warnings that the Constitutional proscription applies. *Fletcher v. Weir*, 455 U.S. 603, 606-07, 71 L. Ed. 2d 490, 494 (1982) (per curiam). The Court reasoned, "In the absence of the sort of affirmative assurances embodied in the *Miranda* warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to postarrest silence." *Id.* at 607, 71 L. Ed. 2d at 494; *see also Wainwright v. Greenfield*, 474 U.S. 284, 295, 88 L. Ed. 2d 623, 632 (1986) ("What is impermissible is the evidentiary use of an individual's exercise of his constitutional rights *after the State's assurance* that the invocation of those rights will not be penalized." (emphasis added)); *State v. Mitchell*, 317 N.C. 661, 667, 346 S.E.2d 458, 462 (1986) (allowing evidence of defendant's post-arrest, pre-*Miranda* silence because "[t]he defendant had not relied on those implicit assurances [in the *Miranda* warnings] and had not been induced to remain silent.").

Our own Supreme Court later extended *Doyle's* holding regarding a defendant's right to silence to encompass a defendant's right to counsel as well, such that invocation of that right after defendant is read the *Miranda* warnings also cannot be used against him. *Ladd*, 308 N.C. at 284, 302 S.E.2d at 172. This case presents the issue of

whether the same reasoning in *Fletcher* serves to limit the application of *Ladd*. In other words, we must now determine whether *Ladd*'s proscription against the use of a defendant's right to counsel against him still applies when the defendant has *not* been given the *Miranda* warnings.

Before proceeding further, we do point out that, because the evidence of defendant's exercise of his right to counsel was used to rebut his mistake-of-fact defense and thus implicitly attack the veracity of his statement "I didn't mean to do it," there is at least some potential debate over whether it was used here for impeachment purposes or for substantive purposes. We need not answer that question as we do not believe it to be decisive. *See, e.g., Wainwright,* 474 U.S. at 292, 88 L. Ed. 2d at 630 (expressly refusing to answer whether use of a defendant's post-*Miranda* silence to rebut an insanity defense was for impeachment or substantive purposes and instead focusing just on the fact that the warnings were given). Instead, we will simply focus on the narrow issue of whether the *Ladd* prohibition against the use of a defendant's right to counsel applies in the absence of the *Miranda* warnings being read.

No case in North Carolina has squarely addressed this precise issue. We acknowledge that, in *State v. Sowell,* 80 N.C. App. 465, 342 S.E.2d 541, *rev'd on other grounds,* 318 N.C. 640, 350 S.E.2d 363 (1986), this Court held that defendant's silence and his exercise of the right to counsel could not be used against him. *Id.* at 468, 342 S.E.2d at 543. The facts of that case seem to suggest that, at the time of defendant's invocation of his rights, no *Miranda* warnings had been given. The *Sowell* Court, however, did not specifically address the issue.

For the answer, we look back to *Ladd*. In that case, the defendant was arrested for murder and armed robbery and then read his *Miranda* rights. *Ladd,* 308 N.C. at 281, 302 S.E.2d at 170. Police officers then began questioning him in their squad car about the whereabouts of some of the stolen money. *Id.* at 282, 302 S.E.2d at 170-71. Defendant initially stated there was no more money, but then told them, "I don't want to say where the rest of the money is now, but I will tell you where the rest of the money is after I talk to my lawyer." *Id.* at 282, 302 S.E.2d at 171. At trial, a police officer testified as to defendant's exercise of his right to counsel. *Id.* In holding this testimony to be constitutionally inadmissible, the *Ladd* Court reasoned:

By giving the *Miranda* warnings, the police officers indicated to defendant that they were prepared to recognize his right to the presence of an attorney should he choose to exercise it. Therefore, we conclude that the words chosen by defendant to invoke this constitutional privilege should not have been admitted into evidence against him.

*Id.* at 284, 302 S.E.2d at 172. Thus, our Supreme Court implicitly used the same rationale employed by the United State Supreme Court in *Fletcher*: the constitutional prohibition is a prohibition against trickery by the State. *Cf. Dean v. Young*, 777 F.2d 1239, 1241 (7th Cir. 1985) ("*Flecther* treats *Doyle* as a prohibition of trickery by the government . . . ."), *cert. denied*, 475 U.S. 1142, 90 L. Ed. 2d 339 (1986). In other words, the State may not assure defendant he has the right to counsel and then turn around and use a defendant's exercise of that assurance against him. Consequently, when no assurances have been made by the State by a *Miranda* warning, the concern for trickery by the State is not at issue. The State is not breaching any promises because it never made any to the defendant in the first place.

We believe *Fletcher* also mandates this result. *Fletcher* affirmatively holds that a defendant's pre-*Miranda* silence can be used against him. *Fletcher*, 455 U.S. at 606-07, 71 L. Ed. 2d at 494. To that end, we do not think any distinction should be drawn between using a defendant's pre-*Miranda* silence (as was involved in *Fletcher*) and using his pre-*Miranda* right to counsel (as is involved here). As stated earlier, the right to remain silent and the right to counsel are necessary corollaries. If the rights themselves are related, then the exercise of those rights should be treated similarly. But were we to distinguish between the two rights, the constitutional analysis would become simply a matter of linguistics: Was defendant invoking his right to remain silent or his right to counsel? This will not always be self-evident. For instance, if a defendant were to state, "I'm keeping silent because I want to talk to my lawyer," which right has he invoked? Has he invoked both? In that case the first half of his statement could come in, but the second half could not. Constitutional analysis should not hinge on linguistic technicalities. As a result, we conclude *Fletcher* mandates similar treatment of both the right to remain silent and the right to counsel.

We therefore hold that the Fifth Amendment's Self-Incrimination Clause (as incorporated through the Due Process Clause of the

Fourteenth Amendment) does not prevent the use of defendant's right to counsel against him at trial when defendant exercises that right prior to his being advised of his *Miranda* rights. Because defendant exercised his right to counsel before being informed of his *Miranda* rights (and before the warnings were even required), the State was not constitutionally prohibited from introducing Officer Edmundson's testimony at trial. We therefore overrule defendant's assignment of error.

[2] Defendant next contends that the trial court erred in refusing to dismiss the charge of second-degree murder. The evidence at trial can be summarized as follows: Brian Dragon (the victim) told defendant he was going to have sex with defendant's sister, to which defendant responded, "You ain't going to do nothing to my sister. I'll shoot you." (Tr. at 670). Defendant then got a gun and pointed it at Dragon. Dragon then shoved defendant, defendant shoved him back, Dragon shoved him once more, and defendant then shot Dragon. Defendant contends this evidence showed he was legally provoked so as to negate the element of malice required for second-degree murder. We disagree.

Our Supreme Court has summarized the law with respect to provocation in the following manner:

> There are two kinds of provocation relating to the law of homicide: One is that level of provocation which negates malice and reduces murder to voluntary manslaughter. Mere words, however abusive or insulting are not sufficient to negate malice and reduce the homicide to manslaughter. Rather, this level of provocation must ordinarily amount to an assault or threatened assault by the victim against the perpetrator.
>
> The other kind of provocation is that which, while insufficient to reduce murder to manslaughter, is sufficient to incite defendant to act suddenly and without deliberation. Thus, words or conduct not amounting to an assault or threatened assault, may be enough to arouse a sudden and sufficient passion in the perpetrator to negate deliberation and reduce a homicide to murder in the second degree.

*State v. Watson*, 338 N.C. 168, 176-77, 449 S.E.2d 694, 699-700 (1994) (citations omitted), *cert. denied*, 514 U.S. 1071, 131 L. Ed. 2d 569 (1995). Here, the victim never assaulted or threatened to assault defendant prior to the homicide. His statement to defendant, cer-

tainly inflammatory, and his shoving of defendant, even twice, were not sufficient legal provocation as to negate malice as a matter of law. Rather, the evidence required the jury to decide.

In this regard, we find *State v. Barr*, 15 N.C. App. 116, 189 S.E.2d 638, *cert. denied*, 281 N.C. 760, 191 S.E.2d 357 (1972), particularly instructive. In that case, the victim and the defendant started a verbal altercation. *Id.* at 117, 189 S.E.2d at 639. The victim then hit the defendant with her shoe, and the defendant returned a blow. *Id.* The two then exchanged blows, to the point that defendant began bleeding. *Id.* Finally, the defendant pulled out a gun and shot the victim. *Id.* at 118, 189 S.E.2d at 640. This Court held it was proper to submit the case to the jury on both second-degree murder and voluntary manslaughter. *Id.* at 119, 189 S.E.2d at 640. We find these facts to be quite analogous to the facts in the present case, as both involved an acrimonious verbal exchange followed by a physical altercation. We therefore hold the trial court properly denied defendant's motion to dismiss the charge of second-degree murder, thereby properly leaving the issue of provocation for the jury to decide.

[3] In another assignment of error, defendant objects to a portion of the prosecutor's closing argument regarding the inference of malice. Specifically, defendant objects to the following language:

I say to you, ladies and gentlemen, and the law presumes, you see, that when somebody points this type of deadly weapon at somebody, has cocked it, is aiming it, and is threatening to use it, that that is inherently dangerous.

(Tr. at 1027). Defendant claims this is an incorrect statement of the law and thus prejudicial to defendant. *See generally State v. Ratliff*, 341 N.C. 610, 616, 461 S.E.2d 325, 328 (1995) ("Incorrect statements of law in closing arguments are improper . . . ."). Specifically, he claims that by using the phrase "the law presumes," the prosecutor shifted the burden of proof to the defendant.

We begin by noting defendant did not object to these closing remarks. Thus, our standard of review is to determine whether the remarks "were so grossly improper that the trial court abused its discretion in failing to intervene *ex mero motu* to correct the error." *State v. Oxendine*, 330 N.C. 419, 422, 410 S.E.2d 884, 886 (1991). We hold that they were not.

At most, the prosecutor's remarks were technical misstatements of the law. Defendant's actions in cocking the gun, pointing it, and

threatening to use it were only *evidence* from which malice might be inferred. The effect of the remarks was not prejudicial, in that the trial court subsequently instructed the jury correctly on the element of malice. *See also State v. Brown*, 320 N.C. 179, 195, 358 S.E.2d 1, 13 (holding that the prosecutor's remark "when a deadly weapon is used in certain ways and fashions, it gives rise to the crime of murder in the first degree" was "so general as to be unobjectionable."), *cert. denied*, 484 U.S. 970, 98 L. Ed. 2d 406 (1987); *State v. Byrd*, 60 N.C. App. 624, 631, 300 S.E.2d 49, 53-54 (holding a prosecutor's technical misstatement of the law was not prejudicial in light of the trial judge's subsequent correct instruction), *rev'd on other grounds*, 309 N.C. 132, 305 S.E.2d 724 (1983). We therefore reject defendant's argument.

**[4]** Defendant also assigns error to the prosecutor's statement in closing arguments regarding defendant's lack of emotion. Specifically, defendant objects to the following remarks:

> You see, all of his conduct, all of his statements, are telling you something about his character, or his lack of character might be a better term. You've had a chance to observe his demeanor here in the courtroom. Have you seen the slightest bit of emotion on his part as we're talking for a week about the death of his so-called best friend? I've watched him. I haven't seen any. He is a cold fish. He's the kind of individual, when you think about it, you see, who would do exactly what the evidence shows he did.

(Tr. at 1102).

A lawyer may not assert his own opinions about a defendant's credibility in open court; issues of credibility are solely the province of the jury. *State v. Locklear*, 294 N.C. 210, 218, 241 S.E.2d 65, 70 (1978); N.C.R. Professional Conduct 3.4. A lawyer may, however, urge the jury to observe and consider a defendant's demeanor during trial. *Brown*, 320 N.C. at 199, 358 S.E.2d at 15. This is because the evidence in a case "is not only what [jurors] hear on the stand but what they witness in the courtroom." *Id.*

Here, although the prosecutor veered toward the line marking comment on defendant's credibility, we do not believe he crossed it. The prosecutor was simply urging the jury to take into account defendant's lack of emotion and "cold fish" demeanor during the trial. In the end, this is sufficiently similar to the case of *State v. Myers*, 299

N.C. 671, 263 S.E.2d 768 (1980), in which our Supreme Court held that the following prosecutorial remarks were proper:

> I watched specifically to see [defendant's] reaction as those pictures of the blood were handed to him and then finally the three pictures of his wife, the woman that he said that he loved, with a gaping hole in her head. He didn't flinch. Didn't bat an eye. I don't know if you were watching him but no remorse and that I contend to you, ladies and gentlemen of the jury, is the first among many things that the State asks that you consider on the question of premeditation and deliberation.

*Id.* at 679-80, 263 S.E.2d at 773-74. We therefore conclude the prosecutor's remarks here were not improper.

**[5]** Finally, defendant assigns error to the trial court's imposition of a civil judgment against him in the amount of $11,000 to cover the victim's funeral expenses. Our statutes now authorize a judge to order the payment of restitution to a victim's estate. N.C. Gen. Stat. § 15A-1340.34(a) (1999). For certain offenses, such as second degree murder, restitution is mandatory. N.C. Gen. Stat. § 15A-1340.34(b). For other offenses, restitution is permissive. N.C. Gen. Stat. § 15A-1340.34(c). However, section 1340.34 became effective 1 December 1998 and thus does not apply to crimes committed before that date. 1998 N.C. Sess. Laws 212 § 19.4(r). The crime here was committed on 29 September 1997, before the statute's effective date. We therefore vacate the trial court's order of restitution.

In all other respects, however, we conclude defendant received a fair trial, free from prejudicial error.

No error in part, vacated in part.

Judges WYNN and HUNTER concur.