STATE OF NORTH CAROLINA v. JACKIE LEE SCOTT, JR.

No. 506A85

(Filed 29 August 1986)

1. **Criminal Law § 85.3— prior instances of defendant's sexual misconduct—evidence inadmissible to attack credibility**

   In a prosecution of defendant for first degree sex offense, cross-examination of defendant about prior instances of defendant's sexual misconduct was not permissible to attack defendant's credibility pursuant to N.C.G.S. § 8C-1, Rule 608(b), since specific instances of conduct relating to sexual relationships or proclivities fall outside the bounds of admissibility under that rule.

2. **Criminal Law § 34.5— prior instances of defendant's sexual misconduct—evidence too remote in time—evidence not probative on issue of identity**

   Evidence of prior instances of defendant's sexual misconduct was not admissible pursuant to N.C.G.S. § 8C-1, Rule 404(b) in a prosecution for first degree sex offense, since the information was not elicited on cross-examination for the purpose of identifying defendant as the perpetrator; defendant's alleged sexual contacts with his sister nine years before trial when defendant was thirteen years old were too remote in time to be probative or relevant; and there were insufficient similarities between the alleged prior misconduct and the present offenses to make the prior incidents probative on the issue of identity.

**3. Rape § 4.1— prior instances of defendant's sexual misconduct—door not opened by defendant**

There was no merit to the State's contention that defendant opened the door to cross-examination about his prior sexual misconduct by volunteering instances of his wife's sexual misconduct.

**4. Rape § 4.1— prior instances of defendant's sexual misconduct—evidence improperly admitted**

In a prosecution of defendant for first degree sex offense where the evidence tended to show that he performed cunnilingus on his three and four-year-old nieces, evidence tending to show that eight years before the offenses charged in this case defendant, then aged thirteen, threatened his sixteen-year-old sister with a knife and sexually molested her was too remote and dissimilar from the crimes charged to be probative of defendant's guilt under any theory of admissibility, and the trial court committed reversible error in admitting such evidence.

Justice MITCHELL concurring.

Justices MEYER and MARTIN join in this concurring opinion.

APPEAL of right by defendant pursuant to N.C.G.S. § 7A-27(a) from two consecutive life sentences imposed after defendant's convictions of two counts of first degree sex offense at the 20 May 1985 Criminal Session of ROWAN County Superior Court, *Morgan (Melzer A., Jr.), J.,* presiding.

*Lacy H. Thornburg, Attorney General, by David Roy Blackwell, Assistant Attorney General, for the state.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Gordon Widenhouse, Assistant Appellate Defender, for defendant appellant.*

EXUM, Justice.

Defendant's appeal presents two evidentiary questions: Whether the trial court committed reversible error in allowing the prosecutor, over objection, (1) to cross-examine defendant concerning specific instances of sexual misconduct unrelated to the offense charged; and (2) to cross-examine his sister, Debra, regarding sexual misconduct between her and defendant occurring some eight years before the offenses charged. We conclude both rulings constituted reversible error, and grant defendant a new trial.

Defendant was convicted of committing first degree sex of-
fense, cunnilingus, against his sister's two daughters, aged four
and three years, respectively, at the time of the offenses alleged
in the indictments. At that time the two girls and their mother,
Debra, were staying with defendant Scott, aged 21, and his fif-
teen-year-old wife, Crystal, in the Scotts' trailer. The various
witnesses' testimony conflicted on precisely when the incident oc-
curred. Generally their testimony placed it during the summer of
1984 when Debra put her daughters to bed and went out for the
evening, leaving the Scotts to babysit.

I.

The state's evidence consisted largely of the testimony of the
older of the two victims and defendant's wife Crystal. The girl
testified as follows: After Debra had put the girls to bed and gone
out for the evening, Crystal and defendant went into the girls'
bedroom and brought them into the Scotts' own bedroom. There,
after all four were disrobed, defendant and Crystal performed
cunnilingus on both girls. Defendant told the girls not to tell any-
one or "the boogerman will get us out of our bed and stab us in
the heart." The older victim also testified she had been molested
by Crystal on numerous other occasions, as well as by their moth-
er, Debra, and two of Debra's male friends.

Crystal, who faced prosecution for the crimes, testified she
was afraid to watch and did not know whether defendant had oral
sex with the girls; but she noted he had "plenty of opportunity."
She claimed he forced her to engage in these sexual acts; she
complied because he had beaten and assaulted her in the past.
Near the end of August 1984 and after six months of marriage,
Crystal separated from defendant. They were not living together
at the time of trial.

Evidence presented through defendant and his sister Debra,
the children's mother, testifying for defendant, tended to show:

Debra and her two daughters moved into the Scotts' trailer
during the summer of 1984. Defendant and Crystal, and some-
times Crystal alone, frequently babysat for the girls. On the night
in question, which was in early June according to Debra, and
June or early July according to defendant, Debra put the children
to bed before going out for the evening, but they soon began cry-

ing. Defendant told Crystal to calm them while he showered. When he stepped out of the shower and returned to the bedroom, he found Crystal and the two girls in bed nude. Crystal was engaging in cunnilingus with the girls. Defendant remonstrated with Crystal, telling her "she could get a lot of time for something like that," and told the children not to tell Debra, else Crystal "would get a lot of time and something bad could happen" and the police could get Debra or Crystal. Defendant denied ever engaging in sexual acts with the children.

Debra testified she first learned from defendant in August 1984 that her children had been molested. The older girl, when questioned, confirmed then that Crystal had performed cunnilingus on both girls as defendant had described while defendant was in the bathroom, and that Crystal had committed similar acts in the past.

## II.

Defendant first contends the trial court committed reversible error by permitting the state over his objection to cross-examine him concerning specific instances of sexual misconduct to attack his credibility as a witness.

The prosecutor cross-examined defendant concerning his California and North Carolina criminal convictions, which included felony joy-riding, possession of stolen property, contributing to the delinquency of a minor, and breaking, entering and larceny. He also cross-examined defendant thus:

Q. Mr. Scott, have you ever forced your sister, Debra or Debbie, to have sexual intercourse with you with the use of a knife or threatening to kill her?

MR. HUNDLEY: OBJECTION, Your Honor.

COURT: Members of the jury, evidence of any misconduct, if there should be evidence of any misconduct, is *admitted here for the sole purpose of attacking the credibility of this witness.* You may not convict this defendant on the present charges except because of something he may have done in the past. All right. EXCEPTION NO. 7

A. No sir, but there were times when my sister, my brother and I would, as all little kids do, play little nasty games and things together.

Q. Does that include sexual intercourse?

A. No sir.

Q. Did you ever use a knife to force her to do that?

A. No sir.

Q. Did you ever threaten to kill her if she did not do these things?

A. No sir.

During further cross-examination, when the prosecutor asked if defendant had reported this matter to the police in July when he was in court on another charge, defendant volunteered that he had told Crystal to "straighten . . . up" on the night in question, but had turned her in later when he caught her having sex with a twelve-year-old boy. Subsequently, after a voir dire and over defendant's objection, Judge Morgan permitted the following questioning "for the purpose of attacking and challenging the credibility of defendant":

Q. You were in the trailer with [the boy's] sister, [Melissa,] were you not?

A. [His] sister and Joey Watts.

Q. How old was she?

A. Fifteen.

Q. Do you like fifteen year old girls?

A. No sir.

Q. You were trying to have sex with Melissa, weren't you?

A. No sir. Joey Watts was in there, how was I going to have sex with her when Joey was in there?

Q. There's been—STRIKE THAT.

Do you know Leara Tate?

A. Yes sir.

Q. Did you ever encourage your wife to have relations with Leara Tate while you and her husband took pictures?

MR. HUNDLEY: OBJECTION.

No sir.

COURT: OVER-RULED. Members of the jury — STRIKE THAT. OBJECTION IS OVER-RULED. EXCEPTION NO. 8

Q. Did you, sir?

A. No sir.

Defendant argues such cross-examination is impermissible. The state says the evidence was admissible because (1) Rule 608 (b) permits such evidence to attack defendant's credibility; (2) Rule 404(b) permits evidence of other similar crimes, wrongs or acts to prove motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake, entrapment or accident; and (3) defendant opened the door for such matters by volunteering information regarding his wife Crystal's sexual activities. We hold the trial court erred in permitting this cross-examination.

[1]    Rule 608(b) provides, in pertinent part:

(b) *Specific Instances of Conduct.* Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, *if probative of truthfulness or untruthfulness,* be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

N.C.G.S. § 8C-1, Rule 608(b) (Cum. Supp. 1985) (emphasis added). Determination of admissibility under this rule rests on whether the alleged prior misconduct elicited at trial was probative of defendant's truthfulness or lack thereof.

Rule 608(b) curtailed former North Carolina practice allowing cross-examination of a defendant for impeachment purposes re-

garding *any* prior misconduct not resulting in a conviction, as long as the prosecutor had a good-faith basis for the questions. *State v. Morgan*, 315 N.C. 626, 634, 340 S.E. 2d 84, 89 (1986). In *Morgan* we dealt with a similar question, and in so doing, set forth requirements for admissibility under Rule 608(b):

> Rule 608(b) addresses the admissibility of specific instances of conduct (as opposed to opinion or reputation evidence) only in the very narrow instance where (1) the *purpose* of producing the evidence is to impeach or enhance credibility by proving that the witness' conduct indicates his character for truthfulness or untruthfulness; and (2) the conduct in question *is in fact probative* of truthfulness or untruthfulness and is not too remote in time; and (3) the conduct in question did *not result in a conviction*; and (4) the inquiry into the conduct *takes place during cross-examination*. If the proffered evidence meets these four enumerated prerequisites, before admitting the evidence the trial judge must determine in his discretion, pursuant to Rule 403, that the probative value of the evidence is not outweighed by the risk of unfair prejudice, confusion of issues or misleading the jury, and that the questioning will not harass or unduly embarrass the witness. Even if the trial judge allows the inquiry on cross-examination, extrinsic evidence of the conduct is not admissible. N.C.G.S. § 8C-1, Rule 608(b) and Commentary.

*Id.* at 634, 340 S.E. 2d at 89-90. Our decision in *Morgan* analyzed the types of evidence routinely approved and disapproved as bearing on the question of a witness's credibility. One type routinely disapproved was noted to be "specific instances of conduct relating to 'sexual relationships or proclivities, . . . or violence against other persons.'" *Id.* at 635, 340 S.E. 2d at 90.

Thus, the testimony elicited from defendant during cross-examination, being instances of sexual relations or proclivities, falls outside the bounds of admissibility under Rule 608(b).

[2] We next consider the state's contention that the testimony elicited during the prosecutor's cross-examination was admissible as substantive evidence under Rule 404(b), which provides:

> (b) *Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the charac-

ter of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C.G.S. § 8C-1, Rule 404(b) (Cum. Supp. 1985).

The state argues it was proper to question defendant about alleged acts of prior sexual misconduct for the purpose of identifying defendant as the perpetrator.

We disagree. First, it is clear this is not the purpose at trial for which the cross-examination was conducted or permitted. Second, defendant's alleged sexual contacts with his sister nine years before trial when defendant was thirteen years old are too remote in time to be probative or relevant. *Cf. State v. Riddick*, 316 N.C. 127, 134, 340 S.E. 2d 422, 427 (1986) (although prior and present crimes separated by six years, defendant, an adult when the prior crimes were committed, was incarcerated for prior crimes until six months before present crimes, effectively explaining remoteness in time). Third, we find insufficient similarities between the alleged prior misconduct and the present offenses to make the prior incidents probative on the issue of identity. The state showed no common *modus operandi* or "signature" between the crime for which defendant was being tried and those about which he was cross-examined. The challenged testimony, therefore, is not admissible under Rule 404(b).

[3] The state argues finally in support of the propriety of the cross-examination that defendant opened the door for the prosecutor's questions by volunteering instances of *his wife's* sexual misconduct. Even if defendant's testimony about his wife's sexual relations with a twelve-year-old boy opened the door to defendant's being questioned about his alleged involvement in that incident, a point we do not decide, it clearly does not open the door to his being questioned about all the other events unrelated both to this incident and to the crime for which defendant was being tried.

The impermissible cross-examination constitutes reversible error if there is "a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C.G.S.

§ 15A-1443(a). The evidence of defendant's guilt was in sharp conflict. We conclude there is a reasonable possibility that the improper cross-examination about defendant's alleged engagement in unrelated sexual acts, which, if not illegal, would be considered by most to be at best bizarre and inappropriate, inflamed the jury against defendant and contributed to the guilty verdict they otherwise might not have reached. The cross-examination, therefore, amounts to reversible error.

### III.

[4] The next issue is whether the cross-examination of Debra, eliciting testimony of defendant's sexual activities with her and his assaults against her with a knife constitutes reversible error. We conclude it does.

After Debra had testified for defendant, the state recalled her for rebuttal and cross-examined her regarding sexual activity with her brother, defendant herein, as follows:

(JURY OUT:)

(Attorneys approach the bench)

COURT: The Court will allow questions based upon what is presented to it at the bench, that is a statement made by the present witness on the witness stand with regard to circumstances under which she says her brother, the defendant, forced her to engage in sexual intercourse and threats related thereto.

The defendant's objection to that is over-ruled and exception is noted. EXCEPTION NO. 9 *The Court will allow that under the conditional North Carolina Rule to show unnatural disposition of the defendant.*

. . . .

[JURY IN]

Q. [D]id you make a statement to the police about this matter?

A. Yes, I did.

Q. In that statement did you indicate to the police that your brother, the defendant in this case, had on numerous occa-

sions forced you to have sexual intercourse with him by the use of a knife and that he threatened to kill you?

A. I did not say he used a knife. I said he sexually molested me and threated [sic] me with a knife. Not that he had used a knife.

Q. But, he threatened you with the knife?

A. Yes, he has.

Q. Is that correct?

A. Yes, he has.

Q. How many times do you mean by numerous?

A. We were kids. He was thirteen, I was sixteen, we had fights.

Q. You wouldn't call raping someone a fight, would you?

A. I'm talking about the knife. He pulled a knife on me before, others before then. It was when we were thirteen or fourteen years old.

Q. And, you allowed him to have intercourse with you?

A. Your Honor, I'd like to not answer that on the Fifth Amendment.

COURT: OBJECTION SUSTAINED.

Q. Well, was it your statement then he forced you to have intercourse?

A. That I was threatened at the time and that my brother had molested me and done . . . certain things at times, yes.

Q. Did he tell you if you told anyone he would kill you?

A. Of course.

Q. Of course?

A. Of course. When someone does something to molest you, you don't let it go. He was thirteen years old.

Q. And, you put that in your statement to the police?

A. Yes, I did.

Judge Morgan permitted the cross-examination "to show unnatural disposition of the defendant."

We conclude this was error. Generally, character evidence is inadmissible to prove action in conformity therewith under *McClain*, and Rule 404(a) of the North Carolina Rules of Evidence. As discussed above, Rule 404(b) provides an exception if the evidence provides proof of motive, opportunity, intent, plan, etc. This Court has held admission of evidence of prior sexual conduct tending only to show defendant's propensity for such activity to be reversible error. *See, e.g., State v. Moore*, 309 N.C. 102, 305 S.E. 2d 542 (1983); *State v. Shane*, 304 N.C. 643, 285 S.E. 2d 813 (1982), *cert. denied*, 465 U.S. 1104, 80 L.Ed. 2d 134 (1984). As correctly noted in 1 Brandis on North Carolina Evidence § 92 (2d rev. ed., 1982), the Court has been markedly liberal in admitting evidence of similar sex offenses to show one of the purposes enumerated in Rule 404(b), *see, e.g., State v. Greene*, 294 N.C. 418, 241 S.E. 2d 662 (1978) (sexual assaults on different women within three hours "showing single scheme or plan"). Nevertheless, the Court has insisted the prior offenses be similar and not too remote in time. *See, e.g., State v. Searles*, 304 N.C. 149, 282 S.E. 2d 430 (1981) (defendant told victim of prior similar sex crimes); *State v. Rick*, 304 N.C. 356, 283 S.E. 2d 512 (1981) (similar sexual assault thirty minutes after the one for which defendant charged); *State v. Browder*, 252 N.C. 35, 112 S.E. 2d 728 (1960) (defendant engaged in sexual intercourse with stepdaughter regularly over several years immediately preceding trial). In other recent cases cited by the state where the perpetrator's identity was in question, we have required significant similarities and little passage of time between incidents. *See, e.g., State v. Thomas*, 310 N.C. 369, 312 S.E. 2d 458 (1984) (sexual attacks upon young boys traveling alone on foot in the dark after defendant ran or jogged up and spoke to victim); and *State v. Leggett*, 305 N.C. 213, 287 S.E. 2d 832 (1982) (perpetrator in separate assaults exposed himself to both young women, ages 15 and 18, before demanding sexual favors at knifepoint; assaults one month apart).

The state relies on our recent decision in *State v. DeLeonardo*, 315 N.C. 762, 340 S.E. 2d 350 (1986), for the proposition that evidence of other similar sex offenses, if not too remote in time, is admissible against the defendant. *DeLeonardo* held admissible, under the new evidence rules, evidence of sex offenses against de-

fendant's three-year-old daughter in defendant's prosecution for first degree sex offense against defendant's two young sons, because the evidence tended to establish a common plan or scheme to sexually abuse his children. The challenged evidence in *DeLeonardo* plainly was relevant under Rule 401.

In summary, although no rule exists generally permitting evidence of a defendant's "unnatural disposition," we have made exceptions under *McClain* or Rule 404(b) if the incidents are sufficiently similar and not too remote in time so as to be more probative than prejudicial under the Rule 403 balancing test.

In the case at bar, however, the evidence tends to show that eight years before the offenses charged herein, defendant, then aged thirteen, threatened his sixteen-year-old sister with a knife and also sexually molested her. These incidents are not similar to the acts of cunnilingus on three- and four-year-old girls with which defendant is here charged. They occurred when defendant himself was a child eight years ago. This evidence is thus too remote and dissimilar from the crimes charged to be probative of defendant's guilt under any theory of admissibility we have heretofore recognized or which is recognized by the new rules. Its admission was error. For the same reasons given earlier on the improper cross-examination issue, the error entitles defendant to a new trial.

We are bolstered in our opinion by our decisions in *Moore* and *Shane*, reaching the same result as the case at bar, in which the differences in *modus operandi* and time were far less pronounced. In *Moore* the attacks occurred two months apart. One was an especially violent rape, sex offense (fellatio) and physical assault at night in the victim's apartment in which the perpetrator threatened to kill the victim, and the other assault took place during the day in a store where defendant performed cunnilingus on the other victim, otherwise molested but never penetrated her, and never threatened or verbally abused her. In *Shane*, a prosecution for first degree sexual offense, the admission of evidence that defendant had participated in oral sex with a prostitute seven months earlier constituted reversible error.

For the reasons given, defendant is given a

New trial.

Justice MITCHELL concurring.

I concur in the holding of the Court. I write separately to emphasize my view that the evidence of the defendant's alleged sexual contacts with his sister nine years before trial was made irrelevant and therefore inadmissible *solely* because those sexual contacts were too remote in time to be probative or relevant. Had the defendant's alleged sexual contacts with his sister occurred at a time reasonably close to the acts for which he was being tried, I believe evidence of them would have been admissible under Rule 404(b) to show the defendant's intent and to identify the defendant — and not his wife — as the perpetrator of the sex offenses against his sister's little children. *See generally* 1 Brandis on North Carolina Evidence § 92 (2d rev. ed. 1982); *State v. Greene,* 294 N.C. 418, 241 S.E. 2d 662 (1978).

Justices MEYER and MARTIN join in this concurring opinion.