STATE OF NORTH CAROLINA v. KAM RICHARD CARPENTER

No. COA00-1416

(Filed 4 December 2001)

**1. Evidence— prior crimes or acts—sexual misconduct— motive—intent—plan, scheme, system, or design**

Evidence of prior alleged acts of sexual misconduct by defendant were admissible in an indecent liberties and sexual offense case under N.C.G.S. § 8C-1, Rule 404(b) to show that defendant had a motive for the commission of the crime charged, defendant had the necessary intent, and there existed in the mind of defendant a plan, scheme, system, or design involved in the crime, where (1) there were numerous similarities between the crimes including that all three young boys were allegedly abused and defendant used ministry and church activities as an excuse for spending time with them, defendant did similar activities with the boys, the places where the sexual abuse occurred and the manner allegedly used by defendant were common factors, and defendant asked all three boys not to tell anyone about the incidents; and (2) the prior acts are not too remote in time.

**2. Evidence— expert opinion testimony—child abuse— delayed and incomplete disclosures—continued association with abuser**

The trial court did not abuse its discretion in an indecent liberties and first-degree sexual offense case by admitting expert opinion testimony stating that delayed and incomplete disclosures are not unusual in cases of child abuse and that children sometimes continue to associate with the alleged abuser, because: (1) the expert was adequately qualified in the area of child abuse evaluations and interviews based on her extensive experience, training, and education; (2) the expert's testimony was instructive and helpful to the jury in understanding the evidence; and (3) a proper foundation was established for the expert's opinion testimony.

**3. Indecent Liberties; Sexual Offenses— jury instruction— symptoms and syndromes**

Although the trial court erred in an indecent liberties and first-degree sexual offense case by instructing the jury on expert opinion testimony on symptoms and syndromes even though a review of the expert's testimony reveals that she never stated the victim's delayed and partial disclosures were symptoms of child abuse, the error was harmless because there is no reasonable possibility that the jury was misled to believe that the expert had testified that the victim showed symptoms of sexual abuse or that a different result would have been reached had the instruction not been given.

**4. Indecent Liberties; Sexual Offenses— requested jury instruction—victim's failure to report conduct—credibility**

The trial court did not err in an indecent liberties and first-degree sexual offense case by denying defendant's request for an instruction on the victim's failure to report the conduct in an attempt to question the victim's credibility as a witness, because: (1) the trial court properly charged the jury on the tests of truthfulness which should be applied to witnesses; and (2) the jury was instructed to apply a balancing test by considering whether the witness's testimony is reasonable and consistent with other believable evidence in the case.

STATE v. CARPENTER

[147 N.C. App. 386 (2001)]

### 5. Appeal and Error— preservation of issues—failure to object

Although defendant contends the trial court committed plain error in an indecent liberties and first-degree sexual offense case by entering the jury room with the jury after the verdict was recorded but before the sentencing hearing, defendant failed to properly preserve this issue for appellate review because: (1) defendant did not object to the judge's behavior at trial; (2) our Supreme Court has only elected to review unpreserved issues for plain error that involve instructional errors or the admissibility of evidence; and (3) this impropriety could not have prejudiced defendant's right to a fair trial since it occurred after the verdict had been reached.

### 6. Criminal Law— jury instruction—corroboration

The trial court did not commit plain error in an indecent liberties and first-degree sexual offense case by its jury instruction on corroboration according to a dictionary definition that was allegedly misleading and incomplete, because: (1) the dictionary definition merely aided the jury in understanding a word the jury had previously heard; and (2) the jury was made further aware of the proper purpose for which the corroborating evidence could be used through an instruction on the proper use of corroborative evidence provided during an expert's testimony.

### 7. Indecent Liberties; Sexual Offenses— sufficiency of evidence

The trial court did not err in an indecent liberties and first-degree sexual offense case by denying defendant's motion to dismiss the charges, because there was ample evidence to support the convictions.

Appeal by defendant from judgments entered 3 May 2000 by Judge Robert P. Johnston in Mecklenburg County Superior Court. Heard in the Court of Appeals 18 October 2001.

*Attorney General Roy Cooper, by Assistant Attorney General Sarah Y. Meacham, for the State.*

*Appellate Defender Staples S. Hughes, by Assistant Appellate Defenders Mark D. Montgomery and Anne M. Gomez, for defendant-appellant.*

MARTIN, Judge.

Defendant was charged, in proper bills of indictment, with five counts of taking indecent liberties with children and with three counts of first degree sexual offense. A jury found him guilty as charged. Defendant appeals from the judgment entered upon the verdicts.

Briefly summarized, the State's evidence at trial tended to show that sometime after 1 August 1994, B.J.D., the alleged victim, (hereinafter "Bobby") accompanied his mother to her alcohol treatment classes and met defendant, his mother's fellow classmate. Defendant told Bobby's mother that he did ministry work and that he often spent time with children on the weekends taking them camping and doing various church activities with them. Shortly thereafter, Bobby, who was approximately eleven years old at the time, began spending weekends with defendant. When Bobby stayed at defendant's residence overnight, he would sleep with defendant in defendant's water bed. Bobby testified that on the second weekend that he stayed with defendant, defendant performed fellatio on him in defendant's bedroom. Bobby was lying on his back naked while defendant was kneeling on the floor. Bobby also testified that defendant rubbed KY Jelly on his penis and ejaculated on the floor.

After Bobby's mother had a violent fight with her boyfriend with whom she was living, she and Bobby moved in with defendant. Bobby slept with defendant in defendant's bed while his mother slept in the living room. Bobby testified that after he moved in with defendant, the sexual abuse became more frequent, occurring every night and every day. These acts of abuse included Bobby performing fellatio on defendant, defendant performing fellatio on Bobby in the shower, defendant performing anal intercourse on Bobby, and defendant kissing Bobby on the mouth with his tongue. Additionally, Bobby testified that while riding in defendant's vehicle, defendant would periodically put his hand into Bobby's pants and feel Bobby's penis. Defendant begged Bobby not to tell anybody about these acts of abuse so that he would not have to return to prison. Bobby did not report the alleged abuse until May 1997, during an interview with Mecklenburg County police officers.

Bobby testified that he thought of defendant as his father, especially since he had never met his biological father. Defendant apparently considered Bobby as his son since he introduced him as "Bobby Carpenter." During the relationship, defendant took Bobby camping,

to Carowinds, to the water park, to Celebration Station, and taught Bobby how to shoot a rocket.

Bobby and his mother lived with defendant for three or four months, until they moved out in 1995 to live with the mother's new boyfriend in Rock Hill, South Carolina. After moving to Rock Hill, Bobby continued to spend time with defendant on the weekends. Bobby, his mother, and her boyfriend lived in Rock Hill for about a year and then moved to Greensboro. Defendant remained in contact with Bobby after the move. Bobby described a specific incident in which defendant picked him up at his bus stop one morning in Greensboro and put him in the back of his van. Defendant drove to a wooded area, parked, and then, while in the back of the van, pulled Bobby's pants down and lay on top of Bobby placing his penis between Bobby's legs.

While living in Greensboro, Bobby's mother admitted Bobby into Charter Hospital three times for anger and behavior problems. While in Charter Hospital the first time in February 1997, Bobby was diagnosed as having unspecified psychosis with hallucinations and major depression. Prior to Bobby's second hospitalization at Charter Hospital in June 1997, Bobby had expressed suicidal wishes and had grabbed his stepfather by the throat. During this second hospitalization, the hospital became aware of and provided therapy to address the alleged sexual molestation. Bobby was diagnosed with recurrent major depression. He was admitted to Charter Hospital for a third time in July 1998 after taking an overdose of his medications; he was diagnosed again with recurrent major depression. After this third hospitalization, the Department of Social Services placed Bobby in foster care since his mother refused to pick him up.

There was evidence at trial that Bobby had a history of lying. Bobby testified that his mother wanted him to stay with defendant on weekends because she was having a hard time with him since he was lying and stealing. Bobby contacted the Department of Social Services and told them that his mother beat him up but he admitted at trial that he had lied about the incident. Additionally, Bobby testified that his mother made him go to Charter Hospital because he was lying and kept running away and was stealing. Bobby also admitted that he lied in group therapy several times while in Charter Hospital. In fact, one of his therapy goals was to ". . . discuss how [his] lies affect other people." In addition, Bobby admitted to lying under oath in juvenile court.

During the trial, Quentin Holton and Thomas Williams each testified that defendant had sexually abused them. Quentin lived with his mother, his mother's boyfriend and the boyfriend's family when the alleged sexual abuse occurred. Defendant, who was living nearby at the time, approached the family posing as a Bible student, and offered to take Quentin, Thomas, and Thomas's brother Ray to church. Defendant took the boys to church, took them to toy stores, and shot bottle rockets with them in the park.

Quentin described an incident that occurred while Quentin was at his older brother's home with defendant. According to Quentin, defendant took him by the arm and pulled him into defendant's bedroom. Defendant placed his hand down into Quentin's shorts and fondled his penis. Quentin testified regarding another act of abuse which occurred while he, defendant, and Holton's brother were at Celebration Station. While Quentin's brother went to the bathroom, defendant took Quentin outside to defendant's van, where he stuck his hand inside Quentin's shorts and felt his penis. Defendant told Quentin not to tell anyone. At the time of the alleged abuse, March 1996, Quentin was in the second grade and was eight years old.

Thomas Williams was living with his grandmother at the time he met defendant. Thomas testified that on several occasions defendant would stick his hand into Thomas' pants and touch his genitals. On trips to toy stores with Quentin, Thomas, and Ray, defendant would drop Quentin and Ray off while he and Thomas would go find a parking space. Thomas described one incident in particular when he and defendant were alone in the Toys 'R Us parking lot when defendant fondled his penis. On a different occasion, the evidence tended to show that defendant pulled Thomas into the back of his van when it was parked beside defendant's house and touched Thomas' genitals. Defendant told Thomas not to tell anybody about what had occurred. The alleged abuse took place during the summer before Thomas entered the second grade in 1995 or 1996.

Defendant did not offer evidence.

---

## I.

[1] Defendant first assigns error to the admission of evidence concerning prior alleged acts of sexual misconduct by defendant. Evidence of prior acts is not admissible to prove the character of the accused in order to show that he had the propensity to act in conformity with the crime charged. N.C. Gen. Stat. § 8C-1, Rule 404(b)

(1999). Such evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." *Id.* The North Carolina Supreme Court has held that Rule 404(b) is a general rule of inclusion. *State v. Golphin,* 352 N.C. 364, 533 S.E.2d 168 (2000), *cert. denied,* 532 U.S. 931, 149 L. Ed. 2d 305 (2001). Additionally, North Carolina's appellate courts have been "markedly liberal in admitting evidence of similar sex offenses to show one of the purposes enumerated in Rule 404(b)." *State v. Scott,* 318 N.C. 237, 247, 347 S.E.2d 414, 419 (1986) (citations omitted). However, in order for evidence of prior acts to be relevant and admissible under Rule 404(b), the acts must be sufficiently similar to and not too remote from the incident for which defendant is currently on trial. *State v. Bagley,* 321 N.C. 201, 362 S.E.2d 244 (1987), *cert. denied,* 485 U.S. 1036, 99 L. Ed. 2d 912 (1988).

In the present case, the State offered testimony from Quentin Holton and Thomas Williams regarding defendant's prior acts of sexual misconduct with them, to show that defendant had a motive for the commission of the crime charged, that defendant had the necessary intent, and there existed in the mind of defendant a plan, scheme, system or design involved in the crime charged in the case. There are numerous similarities between the testimony of Bobby, Quentin, and Thomas. For example, all three boys were in the custody of single women when they were allegedly abused and defendant used ministry and church activities as an excuse for spending time with them. Additionally, defendant did similar activities with the boys—shot off rockets in the park and visited amusement parks. The places where the sexual abuse occurred and the manner allegedly used by defendant were also common factors; defendant allegedly abused the children in either his bedroom or his vehicles. Further, defendant fondled all three boys' genitals by slipping his hand into their pants or shorts and defendant asked all three boys not to tell anyone about the incidents.

The prior acts admitted into evidence are not too remote in time since they occurred within two years of the incidents for which defendant is currently charged. Since the alleged sexual offenses committed against Bobby in this case are sufficiently similar and because the prior acts are not too remote in time, we hold that Quentin Holton's and Thomas Williams' testimonies were properly admitted under Rule 404(b).

## II.

**[2]** Defendant next contends that the trial court erred in admitting expert opinion testimony by Susan Vaughn that delayed and incomplete disclosures are not unusual in cases of child abuse, and that children sometimes continue to associate with the alleged abuser. Defendant argues Vaughn's testimony should have been excluded because the State failed to show that there was any scientific foundation for this opinion testimony, that this expert testimony was improperly used to bolster Bobby's credibility, and that this expert testimony improperly suggested that Vaughn believed that Bobby was abused because of his delayed reporting. We reject these arguments.

An expert's opinion may be admitted into evidence "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." N.C. Gen. Stat. § 8C, Rule 702 (1999). "[A] witness [is] qualified as an expert by knowledge, skill, experience, training, or education . . . ." *Id.* Additionally, "[a] trial court is afforded wide latitude in applying Rule 702 and will be reversed only for an abuse of discretion." *State v. Parks*, 96 N.C. App. 589, 592, 386 S.E.2d 748, 750 (1989).

Defendant argues the State failed to show that there was any scientific foundation for Vaughn's opinion testimony. First, we note that Vaughn was adequately qualified in the area of child sex abuse evaluations and interviews based on her extensive experience, training, and education. Vaughn had received a masters degree in social work and later had an internship lasting two years at Duke University Medical Center where she interviewed suspected victims of child sexual abuse. At the time of trial, Vaughn was a licensed clinical social worker and her job involved evaluating and interviewing children and families when it was suspected that the children had been maltreated. Prior to this employment, Vaughn had several other jobs in which she interviewed and evaluated child victims of sexual abuse. In fact, Vaughn estimated that she had interviewed a couple thousand children throughout her career. Thus, Vaughn was properly qualified as an expert in the area of child sex abuse evaluations and interviewing.

Vaughn's testimony was clearly instructive and helpful to the jury in understanding the evidence since "[t]he nature of the sexual abuse of children . . . places lay jurors at a disadvantage." *State v. Oliver*, 85

N.C. App. 1, 11, 354 S.E.2d 527, 533, *disc. review denied*, 320 N.C. 174, 358 S.E.2d 64 (1987). Though she did not specifically cite supporting texts, articles, or data, Vaughn testified on *voir dire* that she was basing her conclusions on literature, journal articles, training, and her experience. Thus, a proper foundation was established for her opinion testimony. In her testimony, Vaughn explained general characteristics of children who have been abused. Vaughn testified that an abused child often delays disclosing the abuse and offered various reasons an abused child would continue to cooperate with an abuser. Vaughn did not testify as to her opinion with respect to Bobby's credibility.

Evidence similar to that offered by Vaughn has been held admissible to assist the jury. *See State v. Bailey*, 89 N.C. App. 212, 365 S.E.2d 651 (1988) (finding expert testimony as to why a child would cooperate with adult who had been sexually abusing child admissible); *State v. Richardson*, 112 N.C. App. 58, 434 S.E.2d 657 (1993), *disc. review denied*, 335 N.C. 563, 441 S.E.2d 132 (1994) (concluding trial court did not err in admitting testimony describing general symptoms and characteristics of sexually abused children to explain the victim's behavior); *State v. Bowman*, 84 N.C. App. 238, 352 S.E.2d 437 (1987) (holding trial court was proper in admitting a doctor's testimony that a delay between the occurrence of an incident of child sexual abuse and the child's revelation of the incident was the usual pattern of conduct for victims of child sexual abuse). Thus, for the foregoing reasons we hold that the trial court did not abuse its discretion in admitting Vaughn's testimony.

III.

[3] Defendant also contends that the trial court erred in instructing the jury on evidence of symptoms and syndromes. Defendant notes that Vaughn testified that delayed and partial disclosures of abuse are common among abused children but never testified that this behavior was a symptom that he had been abused. Over defendant's objection the trial court instructed the jury as follows:

Expert opinion testimony **that one exhibits symptoms of sexual abuse** may be considered by you only if you find that it does corroborate the victim's testimony at this trial. That is, if you believe this opinion testimony tends to support the testimony of the alleged victim.

The testimony is admitted solely for the purpose of corroboration and not as substantive evidence. You may not convict the defendant solely on this opinion testimony.

(emphasis added). This instruction was taken from N.C.P.I.—Crim. 104.96.

Upon careful review of Vaughn's expert testimony, we agree with defendant that Vaughn never stated that Bobby's delayed and partial disclosures were symptoms of child abuse. Vaughn generally discussed common behaviors of children who have been abused. Therefore, the jury instruction stated above should not have been given. The instructional error does not entitle defendant to a new trial, however, since we discern no reasonable possibility that the jury was misled to believe that Vaughn had testified that Bobby showed symptoms of sexual abuse or that a different result would have been reached had the instruction not been given. *See* N.C. Gen. Stat. § 15A-1443(a). Therefore, this assignment of error is overruled.

IV.

[4] Defendant next argues that the trial court erred in denying his request for an instruction on the complainant's failure to report the conduct. Defendant requested that the jury be instructed that Bobby's failure to report the abuse could be considered on the question of Bobby's credibility as a witness. The requested jury instruction provided the following:

The defense contends that Bobby [] contends that Bobby [] failed to make any out cry [sic] at the time of the alleged indecent liberties and sex offenses; in addition, the defense contends that [Bobby] failed to report the alleged indecent liberties and sex offenses until several years after he contends it occurred.

If you find from the evidence that [Bobby] made no out cry [sic] at the time of the alleged indecent liberties and sex offense, or that he failed to report the alleged incidents until several years had passed, then those are factors that you can consider in determining the credibility of his testimony.

"It is well established that when a defendant requests an instruction which is supported by the evidence and is a correct statement of the law, the trial court must give the instruction, at least in substance." *State v. Garner*, 340 N.C. 573, 594, 459 S.E.2d 718, 729 (1995),

*cert. denied,* 516 U.S. 1129, 133 L. Ed. 2d 872 (1996). Defendant relies on *State v. Dill,* 184 N.C. 645, 113 S.E.2d 609 (1922) to support his argument that the requested instruction was required by law. His reliance on *Dill* is misplaced. In *Dill,* the prosecuting witness delayed for several days in reporting her rape. The trial court instructed the jury that the alleged victim's delay in reporting should be considered in determining her credibility but that " '[t]he mere fact that she delayed in making her statement does not itself discredit her testimony.' " *Dill,* 184 N.C. at 649, 113 S.E. at 612. Thus, in essence, the trial court instructed the jury to consider the evidence of the alleged victim's delay in reporting the crime when determining credibility but balancing that evidence with all circumstances which may explain such a delay. The North Carolina Supreme Court found no error in the trial court giving such an instruction.

Defendant seems to suggest that the holding in *Dill* should be interpreted to mean that if requested, a delayed reporting instruction is required in child sexual abuse cases. We disagree and find in the case *sub judice* that the trial court properly charged the jury on the "tests of truthfulness" which should be applied to witnesses. The jury was instructed to apply a balancing test similar to *Dill* by considering whether the witness's testimony is reasonable and consistent with other believable evidence in the case. Therefore, we conclude that the jury was adequately instructed in determining the credibility of the alleged victim and we find no error in the court's refusal of the instruction.

V.

**[5]** Defendant next contends that the trial court committed plain error by entering the jury room with the jury after the verdict was recorded, but before the sentencing hearing. However, defendant failed to properly preserve this issue for appellate review since he did not object to the judge's behavior at trial. *See* N.C.R. App. P. 10(b)(1). Defendant requests that we apply the plain error standard in reviewing this assignment of error. Rule 10(c)(4) of the North Carolina Rules of Appellate Procedure provides

> [i]n criminal cases, a question which was not preserved by objection noted at trial and which is not deemed preserved by rule or law without any such action, nevertheless may be made the basis of an assignment of error where the judicial action questioned is specifically and distinctly contended to amount to plain error.

However, the North Carolina Supreme Court has only elected to review unpreserved issues for plain error that involve instructional errors or the admissibility of evidence. *See State v. Steen*, 352 N.C. 227, 536 S.E.2d 1 (2000), *cert. denied*, 531 U.S. 1167, 148 L. Ed. 2d 997 (2001); *State v. Gregory*, 342 N.C. 580, 467 S.E.2d 28 (1996). Though we disapprove of the trial court's conduct in this regard, the error has been waived. Even so, this impropriety could not have prejudiced defendant's right to a fair trial since it occurred after the verdict had been reached. This assignment of error is overruled.

## VI.

[6] In addition, defendant argues the trial court committed plain error in its instruction to the jury on "corroboration," because it was misleading and incomplete. Defendant acknowledges that he did not object to the jury instruction defining "corroboration" and therefore asks that we apply plain error review to this issue. Since this assignment of error alleges an instructional error, we will review it for plain error. *See State v. Gregory*, 342 N.C. 580, 467 S.E.2d 28 (1996).

Plain error is " '*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' or 'where [the error] is grave error which amounts to a denial of a fundamental right of the accused . . . .' " *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *U.S. v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)). In order to prevail under the plain error analysis, the defendant must show that "(1) there was error and (2) without this error, the jury would probably have reached a different verdict." *State v. Najewicz*, 112 N.C. App. 280, 294, 436 S.E.2d 132, 141 (1993), *disc. review denied*, 335 N.C. 563, 441 S.E.2d 130 (1994).

In the present case, upon request of defendant, the jury was instructed numerous times that certain testimony was being admitted solely for corroborative purposes. The jurors requested a definition of "corroboration" and the trial judge provided the dictionary definition of "corroborate" from the *American Heritage College Edition*, 3rd edition. The trial judge instructed the jury as follows:

Comes from the Latin corroborate, corroborat, meaning to strengthen. And corroborate is defined as to strengthen or support with other evidence. To make more certain, such as to corroborate my story.

Defendant contends this instruction did not distinguish corroborating from substantive evidence. However, we note that the foregoing dictionary definition was not the only instruction given the jury concerning the proper use of corroborative evidence. Further instruction on the proper use of corroborative evidence was provided during Susan Vaughn's testimony. The judge instructed as follows:

> Members of the Jury, the testimony you are about to receive, and any [of] the opinions of this witness, are admitted for the sole purpose of corroborating the testimony of [Bobby], that is if you believe this opinion testimony tends to support the testimony of him. It is not being admitted to prove that any sexual offense actually took place, and you are not to consider it for that purpose.

Therefore, when viewing all of the instructions concerning "corroboration," the dictionary definition merely aided the jury in understanding a word it had previously heard and the jury was made further aware of the proper purpose for which the corroborating evidence could be used. Thus, we hold that the trial court did not commit error, much less plain error, in instructing the jury on "corroboration."

## VII.

[7] Finally, defendant assigns error to the trial court's denial of his motion to dismiss the charges. After thoroughly reviewing defendant's argument supporting this assignment of error and the record on appeal, we determine there was ample evidence to support defendant's conviction for both first degree sexual offenses and taking indecent liberties with children. *See* N.C. Gen. Stat. §§ 14-27.4(a)1 and 14-202.1(a) (1999).

Because defendant offers no argument in support of his remaining assignments of error, they are deemed abandoned. N.C.R. App. P. 28(a), 28(b)(5).

No error.

Judges WALKER and TYSON concur.